IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| ALCON VISION, LLC,<br><br>           Plaintiff,<br>v.<br><br><br><br><br>LENS.COM, INC.,<br><br>           Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [42] MOTION FOR SIGNIFICANT EXPENSES AND DENYING [44] MOTION FOR SANCTIONS**<br><br>Case No. 2:20-mc-00639-DBB-CMR<br><br>Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |
| 1-800 CONTACTS, INC.<br><br>           Respondent. | |

This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) (ECF 4). Before the court is Respondent 1-800 Contacts, Inc.'s (1-800 Contacts) Motion for Attorney Fees and Award of Significant Expenses (Motion for Expenses) (ECF 42). Also before the court is Defendant Lens.com, Inc.'s (Lens.com) Motion for Sanctions (ECF 44). Having carefully considered the relevant filings (ECF 42–47) and oral argument (ECF 49), and for the reasons set forth below, the court GRANTS IN PART the Motion for Expenses and DENIES the Motion for Sanctions.

                                          I.        **BACKGROUND**

Plaintiff Alcon Vision (Alcon) initiated an action in the Eastern District of New York bringing claims against Lens.com for trademark infringement and unfair competition arising from

alleged gray market contact lens sales (New York Case).[1] Lens.com filed a motion to compel asking this court to enforce compliance with a subpoena served on non-party 1-800 Contacts (ECF 2). On June 15, 2022, the court issued an order (Order) (ECF 22) granting Lens.com's motion to compel and setting a production deadline of June 30, 2022. On June 21, 2022, 1-800 Contacts filed a motion to stay enforcement (ECF 42) of the Order. On June 29, 2022, 1-800 Contacts also filed an Objection (ECF 28) to the court's Order. On July 20, 2022, the court denied the motion to stay and extended the time for 1-800 Contacts to comply with the Order until July 29, 2022 (ECF 35). Two days before this deadline, 1-800 filed a second motion to stay enforcement (ECF 37) of the Order before Judge Barlow. On the date of the deadline, 1-800 Contacts produced information responsive to the subpoena and filed a notice of withdrawal (ECF 40) of the second motion to stay. Judge Barlow ultimately overruled 1-800 Contacts' Objection to the Order on August 9, 2022 (ECF 41).

On August 23, 2022, 1-800 Contacts filed the present Motion for Expenses (ECF 42) seeking to recover its expenses for producing documents responsive to the subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. 1-800 Contacts indicates it reviewed 37,000 potentially responsive pages for confidentiality and privilege, and ultimately its production consisted of 400 documents totaling 5,700 pages (ECF 42 at 3). Using the lodestar method for calculating fees,[2] 1-800 Contacts claims to have incurred $65,551.43 in attorney fees and $3,573.39 for an electronic discovery vendor resulting from compliance with the subpoena (ECF 42 at 5). Lens.com filed an Opposition arguing the claimed fees are unreasonable (ECF 43), and

---

[1] *Alcon Vision, LLC v. Lens.com, Inc.*, No. 1:18-cv-00407-NG-RLM (E.D.N.Y).
[2] *See, e.g.*, *BlueRadios, Inc. v. Kopin Corp., Inc.*, No. 1:16-CV-02052-JLK, 2022 WL 17976672, at *5 (D. Colo. Sept. 16, 2022) (describing the lodestar method as multiplying the hours counsel spent by an hourly rate).

1-800 Contacts thereafter filed a Reply (ECF 45). On September 16, 2022, Lens.com filed its Motion for Sanctions seeking reimbursement of its attorney fees for "1-800's bad faith abuse of the discovery process" pursuant to the court's inherent power to award fees (ECF 44 at 1). 1-800 Contacts filed an Opposition (ECF 45) arguing Lens.com has failed to meet its burden to show bad faith, and Lens.com filed a Reply (ECF 46). On December 13, 2022, the court heard oral argument (ECF 49) on the Motion for Expenses and Motion for Sanctions. The court will address each motion in turn below.

## II.   DISCUSSION

### A.   Motion for Expenses

Rule 45 provides that an order requiring compliance with a subpoena must "protect a person who is neither a party nor a party's officer from significant expenses resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). "The party seeking reimbursement has the burden of establishing 'the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted.'" *Lambland, Inc. v. Heartland Biogas, LLC*, No. 18-CV-01060-RM-KLM, 2019 WL 6052414, at *3 (D. Colo. Nov. 15, 2019) (quoting *In re Application of Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2012 WL 1901217, at *4 (D. Colo. May 24, 2012), *aff'd,* 520 F. App'x 736 (10th Cir. 2013)).

#### 1.   1-800 Contacts Incurred Significant Expenses.

"The court must first determine what expenses resulted from compliance, and then whether those expenses are significant." *FTC v. Zurixx, LLC*, No. 2:19-cv-00713-DAK-DAO, 2021 WL 2779285, at *1 (D. Utah July 2, 2021) (quoting *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. CV 12-526 MV/GBW, 2016 WL 10296569, at *1 (D.N.M.

May 11, 2016)). 1-800 Contacts claims that it incurred $12,882.00 in attorney fees for narrowing the subpoena (to confer and negotiate with Lens.com and object to scope); an additional $52,669.43 in attorney fees (to identify, collect, process, and review documents for confidentiality and privilege issues); and $3,573.39 in vendor costs for producing documents in response to the subpoena (ECF 42 at 6–7). Stated otherwise, 1-800 Contacts seeks an award of $65,551.43 in attorney fees and $3,573.39 in costs, for a total award of $69,124.82. 1-800 Contacts argues that significant expenses under Rule 45 include both the costs of actual production as well as efforts to narrow an overly broad subpoena (*id.* at 7 n.3 (citing *Linglong Ams. v. Horizon Tire, Inc.*, No. 1:15CV1240, 2018 WL 1631341, *3 (N.D. Ohio Apr. 4, 2018) (fees "incurred directly responding to the subpoena," such as by "work[ing] extensively to narrow the scope of the subpoena" are compensable))).

Lens.com does not appear to dispute that 1-800 Contacts' $69,124.82 in total claimed expenses resulted from compliance with the subpoena. In reviewing the declaration 1-800 Contacts submitted in support of this Motion for Expenses, it does detail the work of three attorneys relating to the subpoena. Lens.com does argue, however, that the expenses claimed by 1-800 Contacts are not significant relative to its $220 million annual revenue (ECF 43 at 8) and relies on the *Zurixx* case to support this argument. In *Zurixx*, the court relied on *Cardinal Growth*, an out of circuit case that concluded that "a compliance cost of more than $44,000 was not a 'significant expense' relative to the substantial income of $2 million the nonparty had collected from the party defendant." *Zurixx*, 2021 WL 2779285, at *3 (quoting *United States v. Cardinal Growth, L.P.*, No. 11 C 4071, 2015 WL 850230, at *3 (N.D. Ill. Feb. 23, 2015)). However, the court in *Zurixx* reasoned that the *Cardinal Growth* case "support[s] an approach where the nonparty's ability to pay is weighed against [a] governmental entity's fiscal responsibility to taxpayers" and that

"comparing the cost of compliance to the amount the nonparty has received from the defendant party is appropriate in determining whether the cost is significant." *Zurixx*, 2021 WL 2779285, at *4. Because this case involves neither a governmental entity nor payment from the defendant to the non-party like in *Cardinal Growth*, the court does not find Lens.com's reliance on *Zurixx* to be persuasive. As noted by 1-800 Contacts, Lens.com has not provided sufficient authority to support its argument that a non-party's income is relevant to the determination of whether expenses are significant.

Lens.com correctly notes that the Tenth Circuit has never decided "what constitutes a 'significant' expense within the meaning of Rule 45" (ECF 43 at 7 (quoting *Rhea v. Apache Corp.*, 833 F. App'x 186, 190 n.2 (10th Cir. 2020))). The Tenth Circuit has nonetheless acknowledged that "other circuits have suggested that amounts in the range of $9,000 to $20,000 qualify as significant." *See Rhea*, 833 F. App'x at 190 n.2. District courts in the Tenth Circuit have determined that amounts less than the $69,124.82 at issue here qualify as "significant." *See, e.g.*, *United States ex rel. D'Anna v. Lee Mem'l Health Sys.*, No. 2:20-mc-196 HCN-DBP, 2022 WL 2047377, at *2 (D. Utah June 7, 2022) (amounts ranging from $468 to $6,172 "would be significant"); *Crandall v. City & Cty. of Denver*, No. 05-cv-00242-MSK-MEH, 2007 WL 162743, at *1 (D. Colo. Jan. 17, 2007) (total of $58,156.81 incurred by United Air Lines, Inc. and Gallagher Bassett Services, Inc. "is significant"). The court finds the amount at issue in the *Crandall* case to be comparable to the amount at issue in this case. As noted above, Lens.com has not provided sufficient authority that the specific amount claimed by 1-800 Contacts is not significant. Moreover, "a significant expense is evident when a non-party is required to produce substantial documents or electronically stored information." *See United States ex rel. D'Anna v. Lee Mem'l Health Sys.*, No. 2:20-MC-196 HCN-DBP, 2021 WL 3913700, at *2 (D. Utah Sept. 1, 2021) (citing

5

*Rhea*, 833 F. App'x at 191). As noted above, 1-800 produced a substantial number of pages in documents in response to the subpoena. For these reasons, the court finds that the expenses claimed by 1-800 Contacts are significant.

        2.       *1-800 Contacts Met its Burden to Shift Expenses.*

"If the expenses are significant, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant." *Zurixx*, 2021 WL 2779285, at *1 (quoting *Presbyterian Healthcare Servs.*, 2016 WL 10296569, at *1). However, "[p]rotection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance." *BlueRadios, Inc. v. Kopin Corp., Inc.*, No. 1:16-CV-02052-JLK, 2022 WL 17976672, at *3 (D. Colo. Sept. 16, 2022) (quoting *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998)). "A non[ ]party can be required to bear some or all of its expense where the equities of a particular case demand it." *Id.* (quoting *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003)). Courts in the Tenth Circuit[3] consider the following equitable factors in making this determination: "(1) whether the nonparty has an interest in the outcome of the underlying litigation; (2) whether the nonparty can more readily bear the cost than the requesting party, and (3) whether the litigation is of public interest." *Zurixx*, 2021 WL 2779285, at *1. "Courts have also considered the scope of discovery and the extent to which the nonparty was required to separate responsive information from

---

[3] 1-800 Contacts argues that application of these factors violates the mandatory language in Rule 45 (ECF 9–10 at n.5) yet still addresses each of the factors because courts in the Tenth Circuit have continued to apply them. Assuming without deciding that these factors are applicable, the court will consider the parties' respective arguments.

privileged or irrelevant material, and the reasonableness of the cost of production incurred." *Id.* (citing *Lambland*, 2019 WL 6052414, at *3).

First, 1-800 Contacts argues that it has no interest in the outcome of the New York Case because it is not a party (ECF 42 at 10). In response, Lens.com claims that 1-800 Contacts has a "significant financial interest" in the New York Case because gray market contact sales harm 1-800 Contacts (ECF 43 at 9). While Lens.com states that this court has already found that 1-800 Contacts has a significant financial interest in the New York Case (ECF 43 at 8), the court did not make this finding in its Order. The court stated in its Order, "Lens.com received discovery from Alcon during this litigation that Alcon and 1-800 Contacts have discussed how the gray market harms both Alcon and 1-800 Contacts" (ECF 22 at 6). This was not a finding of a "significant financial interest." *See Zurixx*, 2021 WL 2779285, at *3. At most, this suggests the court acknowledged the possibility of a financial impact on 1-800 Contacts. Lens.com does not provide authority to support that this is sufficient for it to avoid its obligation under Rule 45 to protect non-party 1-800 Contacts from significant expense. In light of this, the court finds that this factor weighs in favor of shifting the expense to Lens.com.

As to the second factor, 1-800 Contacts argues that Lens.com can bear the cost of compliance as readily as it can because Lens.com is litigating the New York Case (ECF 42 at 10). Lens.com responds that 1-800 Contacts has failed to meet its burden to show it cannot more readily bear the cost considering that Lens.com has less revenue than 1-800 Contacts (ECF 43 at 8). 1-800 Contacts notes that Lens.com has not requested that the court take judicial notice of the annual revenues of 1-800 Contacts and Lens.com or submitted this information in a form that would be admissible at trial (ECF 45 at 6, 8). While the court agrees that Lens.com is a large corporation capable of subsidizing its own litigation costs, 1-800 Contacts has not met its burden to provide

information indicating that it is "unable to bear the costs of compliance." *See Zurixx*, 2021 WL 2779285, at *4. The court therefore finds that this factor weighs against shifting the expense.

Finally, 1-800 Contacts argues that the New York Case is of little public interest because it involves enforcement of a specific trademark rather than a class action (ECF 42 at 10–11; ECF 45 at 10), while Lens.com counters that the New York Case is of public interest because it impacts the affordability of contact lenses (ECF 43 at 10). 1-800 Contacts relies on caselaw suggesting that infringement suits, without more, are of little to no public interest (ECF 45 at 10). The court agrees with 1-800 Contacts and finds that the final factor weighs in favor of shifting costs. Having considered the circumstances of this case, the court concludes that the equitable factors support shifting the expense of compliance with the subpoena to Lens.com.

 3. *Most of the Expenses Incurred by 1-800 Contacts are Reasonable.*

Turning to the reasonableness of the fee request, 1-800 Contacts contends that its claimed expenses for narrowing and complying with the subpoena are reasonable because the subpoena was facially overbroad and necessitated review of over 37,000 pages for responsiveness and privilege (ECF 42 at 8–9). Lens.com asks the court to reduce the $65,551.43 in requested attorney fees because two attorneys at the partner level performed work that is typically performed by associates (ECF 43 at 11).[4] Lens.com requests that 78.7 hours of work performed by the two

---

[4] The declaration of 1-800 Contacts only identifies Steven Joffee (a 2010 graduate) as a partner, and Evan Strassberg (1998 graduate) and Ethan Bercot (2014 graduate) as attorneys that helped on the matter, but Mr. Strassberg's rate is consistent with Mr. Joffee's partner level rate (ECF 42-1). For ease of reference, the court will use Lens.com's designation of Joffee and Strassberg as partners and of Bercot as an associate attorney.

partners be reduced to the hourly rate of $295, which is the rate of the 1-800 Contacts' associate,[5] resulting in a $11,018.00 reduction (*id*).[6]

1-800 Contacts responds that partners may appropriately perform document review "when 'more experience and knowledge' is needed, such as when the documents at issue 'c[o]me from senior executives, including the CEO, and contain[] confidential and sensitive information'" (ECF 45 at 10–11 (quoting *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2021 WL 4844058, at *4–5 (D. Kan. Oct. 18, 2021)). 1-800 Contacts claims that the information requested by Lens.com required review of confidential and highly sensitive business information from executive leadership and that more experienced attorneys were able to conduct the review more efficiently (*id.*). While the court agrees that the nature of the information requested in this case necessitated review by more senior attorneys, it disagrees a review by two partner level attorneys was necessary and therefore reduces the total attorney fee award of $65,551.43 by 16%[7] or $10,488.23 to account for duplication of effort. This 16% general reduction results in an attorney fee award of $55,063.20, which the court finds to be a reasonable amount.

---

[5] Lens.com has not otherwise challenged the use of the lodestar method or the reasonableness of the attorneys' hourly rates. Regardless, the court finds the calculation method and hourly rates to be reasonable and comparable to the local market. *See Parker v. CitiMortgage, Inc.*, 987 F. Supp. 2d 1224, 1235 (D. Utah 2013), *aff'd*, 572 F. App'x 602 (10th Cir. 2014) ("A reasonable rate is the prevailing market rate in the relevant community." (quoting *Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002))).

[6] Lens.com does not explain its calculation method to arrive at the $11,018 reduction. It appears Lens.com used a partner rate of $435, but 1-800 Contacts billed its two partners at different rates ranging from $325 to $435 as set forth in its declaration (ECF 42-1). The declaration of Lens.com that contains the chart used to justify the requested 78.7-hour reduction fails to account for the varying rates of 1-800 Contacts attorneys, and while it is possible the entries identified match up to 1-800 Contacts' entries at the $435 rate, Lens.com not does specifically address this (ECF 43-1), and the court declines to do so. *See Electro-Mech. Prods., Inc. v. Alan Lupton Assocs. Inc.*, No. 1:22-CV-00763-PAB-SBP, 2025 WL 51205, at *16 (D. Colo. Jan. 8, 2025) ("In exercising its discretion in determining reasonable attorney's fees, this court need not analyze the reasonableness of the lawyer's billed hours on a task by task basis.").

[7] It appears the requested reduction of Lens.com was approximately 16.8%, which is consistent with the reduction the court orders.

Lens.com further argues that 1-800 Contacts' claimed expenses are not reasonable because 1-800 Contacts failed to limit costs by (1) forcing Lens.com to file its motion to compel; (2) never providing the court information about the burden of compliance; and (3) making repeated efforts to delay compliance (ECF 43 at 4–6). Lens.com asks that the attorney fees be reduced to account for delaying compliance, overbilling, and failing to meet and confer (*id.*). Courts have reduced expense awards based on inefficiencies such overbilling. *See, e.g.*, *Electro-Mech. Prods., Inc. v. Alan Lupton Assocs. Inc.*, No. 1:22-CV-00763-PAB-SBP, 2025 WL 51205, at *17–18 (D. Colo. Jan. 8, 2025) (ordering a 30 percent general reduction in part for duplication of effort).

Here, other than generally referencing 75 hours were spent on "reviewing documents and related tasks," etc., Lens.com does not identify which time entries are inappropriate or excessive or identify a specific amount by which it requests that the fee award be reduced based on these arguments. Regardless, the fee declaration submitted by 1-800 Contacts did not include charges for drafting the motions to stay or objecting to the Order (ECF 45 at 4). Moreover, it does not appear that the fee declaration includes excess charges as a result of delaying compliance or failing to meet and confer (ECF 42-2). Review of the fee declaration reflects that a reasonable amount was billed for narrowing and responding to the subpoena (*id.*). Thus, the court declines to make a reduction to the total claimed attorney fees on this basis.

For these reasons, the court GRANTS IN PART the Motion for Expenses (ECF 42) and awards $55,063.20 in attorney fees and $3,573.39 in vendor costs for a total award of $58,636.59 to 1-800 Contacts.

    **B.**    **Motion for Sanctions**

Lens.com requests that the court sanction 1-800 Contacts pursuant to its inherent powers based on abuse of the discovery process (ECF 44 at 8). Under the "American Rule," unless a statute

or rule provides otherwise, litigants are responsible for their own legal fees. *See F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). "In certain rare circumstances, however, an exception to this rule is applied when a [litigant] is found to have acted in bad faith." *Id.* (quoting *United States v. McCall,* 235 F.3d 1211, 1216 (10th Cir. 2000)). "[O]ne permissible sanction is an assessment of attorney's fees—an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). This "includes sanctions to prevent abuses of the discovery process." *Diesel Power Source v. Crazy Carl's Turbos*, No. 2:14-CV-826 DN, 2017 WL 721995, at *1 (D. Utah Feb. 23, 2017). The party moving for sanctions bears the burden of proving bad faith conduct. *See, e.g.*, *Rogler v. Standard Ins. Co.*, 30 F. App'x 909, 914 (10th Cir. 2002) (affirming denial of sanctions where movant "did not meet her burden of proving that [respondent] acted bad faith").

Additionally, "courts generally require a finding . . . of subjective bad faith" by a party. *See Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984); *see also Kuykendall*, 466 F.3d at 1152–53 ("The test for bad faith is conjunctive—it requires clear evidence of *both* a complete lack of color *and* an improper purpose[.]"). The Tenth Circuit has "stated that 'for the exceedingly narrow bad faith exception' to the American Rule to apply, 'there must be clear evidence that the challenged [argument] is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Kornfeld v. Kornfeld*, 393 F. App'x 575, 579 (10th Cir. 2010) (quoting *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006)).

Here, Lens.com argues that bad-faith sanctions are warranted in this case on four grounds. First, Lens.com argues that 1-800 Contacts unreasonably maintained that the documents requested in the subpoena were not relevant to the New York Case (ECF 44 at 8). Lens.com points to the

Order's ruling that the requested documents were relevant to the gray market goods test applicable to the merits of the New York Case (ECF 22 at 6), and Judge Barlow overruling 1-800 Contacts' Objection (ECF 41 at 5). 1-800 Contacts responds that its relevance arguments were legally sound and made in good faith and that Lens.com makes only conclusory allegations of bad faith (ECF 46 at 6). 1-800 Contacts argues that it had a colorable basis to object to the relevance of the requested documents and that the parties' briefing on Lens.com's motion to compel reflect a disagreement on the law (ECF 46 at 7). Courts have consistently stated that "[a] mere disagreement regarding the law and its applicability to th[e] case does [not] warrant sanctions." *See, e.g.*, *Pilot Inc. v. TYC Bro. Indus. Co., Ltd.*, No. 2:20-cv-02978-ODW (RAOx), 2021 WL 135785, at *4 (C.D. Cal. Jan. 14, 2021); *see also Tribal Council v. Foster*, No. CIV-17-01048-PRW, 2019 WL 1852414, at *2 (W.D. Okla. Apr. 24, 2019) (declining to award bad faith sanctions based on a "legal disagreement that is not so one-sided so as to warrant sanctions."). The court agrees with 1-800 Contacts that its relevance arguments were colorable and that Lens.com's disagreement with these arguments is insufficient to meet its high burden to show bad faith.

Second, Lens.com points to 1-800 Contacts' failure to comply with the Order's original June 30, 2022 deadline to produce documents (ECF 44 at 9). In response, 1-800 Contacts notes the fact that it timely produced responsive documents by the extended deadline of July 29, 2022 (ECF 46 at 9). The court agrees with 1-800 Contacts that its failure to comply with the initial deadline cannot be a basis for a bad faith sanction because it timely sought a stay of this deadline and then timely produced responsive documents before the extended deadline. While this conduct may have resulted in a brief delay in the proceedings, the court once again is unable to find this conduct to be sufficient to warrant a finding of bad faith.

Third, Lens.com contends that 1-800 Contacts filed and withdrew unnecessary motions including the second motion to stay (ECF 44 at 10). 1-800 Contacts responds that its second motion to stay and its withdrawal were for a proper purpose, namely to exercise its right to have its Objection to the Order resolved before responding to the subpoena (ECF 46 at 10). When it became apparent that Judge Barlow would not be ruling on the Objection prior to the production deadline, 1-800 Contacts withdrew the second motion to stay and produced documents on the deadline, reserving the right to claw-back its production (*id.*). While Lens.com may disagree with 1-800 Contacts' litigation strategy, this is insufficient to warrant bad-faith sanctions. As explained above, "the bad-faith exception . . . requires more than a showing of a weak or legally inadequate [argument], and more than a finding of negligence, frivolity, or improvidence." *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1382–83 (10th Cir. 1988). As such, the court does not find this conduct to rise to the level of bad faith.

Finally, Lens.com claims that 1-800 Contacts wrongly stated that the court had awarded fees (ECF 44 at 11). 1-800 Contacts denies this claim and argues that its fee-shifting objection was legally sound (ECF 46 at 11). As discussed above, even though 1-800 Contacts' Objection was ultimately overruled by Judge Barlow, an argument that ultimately proves to be legally inadequate does not demonstrate bad faith.

In summary, the court disagrees that Lens.com has met its burden to show that bad-faith sanctions against 1-800 Contacts are warranted and therefore DENIES Lens.com's Motion for Sanctions (ECF 44).

### III.   CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS IN PART 1-800 Contacts' Motion for Expenses (ECF 42) and DENIES Lens.com's Motion for Sanctions (ECF 44).

IT IS SO ORDERED.

DATED this 30 December 2025.

                                                          *Cecilia M. Romero*
                                                          Magistrate Judge Cecilia M. Romero
                                                          United States District Court for the District of Utah